**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------------x
                                                                 :
In re:                                                           :    Chapter 11
                                                                 :
                                                                 :    Case No. 17-12914 (KG)
                                                                 :
                                                                 :    (Jointly Administered)
                                                                 :
                                                                 :
ORCHARD  ACQUISITION  COMPANY, LLC, *et*                         :
*al.*,                                                           :
                                                                 :
Debtors.[1]                                                      :
                                                                 :    Ref. Docket Nos. 6 & 51
                                                                 :
-----------------------------------------------------------------x

**FINAL ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS**
**105(a), 361, 362, 363, 503, AND 507, BANKRUPTCY RULES 2002, 4001, 6004**
**AND 9014, AND LOCAL RULE 4001-2 (I) AUTHORIZING DEBTORS TO**
**USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO**
**PREPETITION SECURED PARTIES; (III) MODIFYING AUTOMATIC STAY; AND**
**(IV) GRANTING RELATED RELIEF**

        Upon the motion (the "Motion") of the above-captioned debtors, as debtors-in-

possession (each, a "Debtor" and collectively, the "Debtors"), pursuant to sections 105(a), 361,

362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002,

4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of a final order

(this "Final Order"), among other things:

        (a)        authorizing the use of the cash collateral, as such term is defined in section
        363(a) of the Bankruptcy Code of Jefferies Finance LLC, as administrative agent and
        collateral agent (in such capacities, the "Prepetition Agent") for the lenders (the "Term
        Lenders," and together with the Prepetition Agent, the "Prepetition Secured Parties")

---

[1]        The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Orchard Acquisition Company, LLC (4753), The J.G. Wentworth Company, LLC (1295), The J.G. Wentworth
Company (7859), J.G. Wentworth, LLC (2773), and JGW Holdings, Inc. (4569).  The Debtors' address is 1200
Morris Drive, Suite 300, Chesterbrook, PA 19087.

party to the Credit Agreement (as defined below), pursuant to section 363(c) of the Bankruptcy Code, on a final basis;

(b)     granting adequate protection on account of the Debtors' use of Debtor Cash Collateral (as defined below) to the extent of any diminution in value of the Debtor Prepetition Collateral (as defined below) to the Prepetition Secured Parties pursuant to sections 361 and 363(e) of the Bankruptcy Code, and of the Prepetition Secured Parties' interests in the Debtor Prepetition Collateral for such use;

(c)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of this Final Order and to deliver any notices of termination of the Restructuring Support Agreement (as defined below);

(d)     subject to the limitations set forth herein, granting Adequate Protection Liens (as defined below) on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code or any other state or federal law (collectively, the "Avoidance Actions");

(e)     except to the extent of the Carve Out (as defined below), approving the waiver by the Debtors of any right to surcharge against the Prepetition Collateral or the Adequate Protection Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law; and

(f)     approving the waiver by the Debtors of any right to assert an "equities of the case" claim against the Prepetition Secured Parties pursuant to section 552 of the Bankruptcy Code; and

due and sufficient notice of the Motion having been given; the Court having conducted an interim hearing on the Motion on December 13, 2017 (the "Interim Hearing"), and this Court having entered an interim order granting the relief sought by the Motion on an interim basis on December 13, 2017 (the "Interim Order") [Docket No. 51]; and the Court having determined in its discretion that a final hearing (a "Final Hearing") was not necessary; and the Court having reviewed the *Declaration of Stewart A Stockdale, Chief Executive Officer in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration", the pleadings, the evidence adduced by the parties, and the representations of counsel; and upon the entire record made at the Interim Hearing; and the Court having considered the Budget (defined below) filed and served

2

by the Debtors; and notice of the Motion having been given to: (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the United States Securities and Exchange Commission; (c) the Office of the United States Attorney for the District of Delaware; (d) the Internal Revenue Service; (e) Davis Polk & Wardwell LLP, as co-counsel to the Debtors' prepetition agent; (f) Potter, Anderson & Corroon LLP, as Delaware co-counsel to the Debtors' prepetition agent; (g) Weil, Gotshal & Manges LLP, as counsel to HPS Investment Partners, LLC (the "New RCF Commitment Party"); and (h) those creditors holding the twenty (20) largest unsecured claims against the Debtors' estates (on a consolidated basis); and it appearing that no other or further notice need be provided; and there being no objections filed to entry of this Final Order; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions contained herein is necessary and essential to enable the Debtors to preserve the value of their businesses and assets and to facilitate the reorganization of the Debtors' businesses and that such relief is fair and reasonable; and the Court finds that good and sufficient cause appears therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases (as defined below) and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

01:22708218.2

B.     On December 12, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered under Case No. 17-12914.

C.     (i) The Debtors, (ii) certain of the Prepetition Secured Parties, including certain Term Lenders and the Prepetition Agent, and (iii) the Consenting Members (as defined therein) are parties to that certain Restructuring Support Agreement dated as of November 9, 2017 (as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Restructuring Support Agreement").

D.     Without prejudice to the rights of any other party in interest in the Chapter 11 Cases (but subject to the limitations with respect to such rights contained in paragraphs 18 and 19 of this Final Order), the Debtors (i) acknowledge, (ii) admit, (iii) agree, and (iv) stipulate that:

1.     The Prepetition Agent, the Term Lenders, Debtor Orchard Acquisition Company, LLC ("Orchard") and Debtor J.G. Wentworth, LLC ("Holdings", together with Orchard, the "Debtor Obligors") are parties to that certain Credit Agreement, dated as of February 8, 2013 (as amended by that certain First Amendment to Credit Agreement, dated as of May 31, 2013, that certain Second Amendment to Credit Agreement, dated as of December 6, 2013, that certain Third Amendment to Credit Agreement, dated as of July 15, 2015, and as otherwise amended, supplemented or otherwise modified from time to time prior to the commencement of these Chapter 11 Cases, the "Credit Agreement"). Pursuant to that certain Guaranty dated as of February 8, 2013, the Guarantors (including the Debtor Obligors and certain of their non-Debtor affiliates; such non-Debtor affiliates, the "Non-Debtor Obligors") guaranteed the Obligations (each as defined in the Credit Agreement). Pursuant to, *inter alia*, that certain Security Agreement, dated as of February 8, 2013 (the "Security Agreement", and together with the Intellectual Property Security Agreement, dated as of February 8, 2013 and each other mortgage, deed of trust, hypothec, assignment of leases and rents, leasehold mortgage, debenture, legal charge or other security document granting a lien to secure the obligations under the Credit Agreement, as amended, restated, or otherwise modified from time to time, the "Security Documents"), the Debtor Obligors and the Non-Debtor Obligors have granted a first-priority lien and security interest (the "Prepetition Liens") in, to, and against their respective property, including but not limited to pledged debt and equity securities, accounts, inventory, cash held by the Non-Debtor Obligors and the Debtor Obligors that constitutes cash collateral (such cash collateral "Cash Collateral", and to the extent such cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, is held by the Debtor Obligors, the "Debtor Cash

4

Collateral"), but excluding certain excluded assets described in the Security Documents (collectively, the "Prepetition Collateral"; and the portion of the Prepetition Collateral granted by the Debtor Obligors together with the Debtor Cash Collateral, the "Debtor Prepetition Collateral"), to the Prepetition Secured Parties (the Credit Agreement, the Security Documents, and any other collateral and ancillary documents executed in connection therewith, collectively, the "Credit Documents"). Pursuant to the Credit Documents, the Debtor Obligors and Non-Debtor Obligors are jointly and severally indebted and liable to the Prepetition Secured Parties for all loans and other obligations described therein and payable thereunder (the "Prepetition Indebtedness").

2.      As of the Petition Date, the Debtor Obligors and the Non-Debtor Obligors are each jointly and severally indebted and liable to the Prepetition Agent and the Term Lenders for an aggregate principal amount of not less than $449.5 million under the Credit Agreement, without defense, counterclaim or offset of any kind, plus accrued and unpaid interest, fees and expenses (including, without limitation, the reasonable and documented fees and expenses of the Prepetition Agent's attorneys, consultants, accountants, experts and financial advisors) and other obligations incurred in connection therewith, in each case in accordance with the terms of the Credit Documents. Each of the Credit Documents is valid, binding and, subject to applicable bankruptcy law, enforceable against the Debtor Obligors and the Non-Debtor Obligors in accordance with its terms.

3.      The Prepetition Indebtedness is secured by valid, binding, perfected, enforceable, non-avoidable, first-priority liens and security interests in, to and against the Prepetition Collateral, and the Prepetition Indebtedness and Prepetition Liens are not subject to, pursuant to the Bankruptcy Code or other applicable law, avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment or any other challenge of any kind, subject only to the Other Senior Liens (as defined below). The Debtors each irrevocably waive, for themselves and their subsidiaries any right to challenge or contest in any way the perfection, validity or enforceability of the Prepetition Liens or the validity or enforceability of the Prepetition Indebtedness or the Credit Documents.

4.      All cash that is Prepetition Collateral and all cash proceeds of the Prepetition Collateral in each case held by the Debtor Obligors, including, without limitation, all such cash proceeds of such Prepetition Collateral held in any of the Debtor Obligors' banking, checking or other deposit accounts with financial institutions, are Debtor Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

E.      Subject to the rights of third parties contained in paragraph 18 of this Final Order,

each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present

and future predecessors, heirs, subsidiaries, successors, and assigns shall to the maximum extent

01:22708218.2

permitted by applicable law, unconditionally, irrevocably and fully forever release, remise, acquit, relinquish, irrevocably waive and discharge each of the Prepetition Secured Parties and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof relating to any of the Credit Documents, or the transactions contemplated under such documents, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Parties.  The Debtors' acknowledgments, stipulations and releases shall be binding on the Debtors and their respective representatives, subsidiaries, successors and assigns and on each of the Debtors' estates, all creditors thereof and each of their respective representatives, successors and assigns, including, without limitation, any trustee or other representative appointed in the Chapter 11 Cases, whether such trustee or representative is appointed in chapter 11 or chapter 7.

6

F.      The preservation, maintenance and enhancement of the value of the Debtors'
assets are of the utmost significance and importance.  The Debtors and their subsidiaries lack
sufficient available sources of working capital and financing, however, to carry on the operation
of their businesses without the use of the Prepetition Collateral, including any Cash Collateral.
Moreover, absent the ability to use the Prepetition Collateral (including any Cash Collateral), the
continued operation of the Debtors' businesses would not be possible.

G.      The Debtors and their subsidiaries continue to collect cash, rents, income,
offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire
equipment, inventory and other personal property, all of which constitute Prepetition Collateral
under the applicable Credit Documents and are, accordingly, subject to the Prepetition Liens.

H.      The Debtors and their subsidiaries desire to use a portion of such cash, rents,
income, offspring, products, proceeds and profits in their business operations, a portion of which
may constitute Debtor Cash Collateral of the Prepetition Secured Parties under section 363(a) of
the Bankruptcy Code.

I.      The Prepetition Agent, on behalf of the Term Lenders, has consented to the
Debtors' use of the Debtor Prepetition Collateral (including any Debtor Cash Collateral)
exclusively on and subject to the terms and conditions set forth herein.

J.      The adequate protection provided to the Prepetition Secured Parties, as set forth
more fully in paragraphs 5 and 6 of this Final Order, for any diminution in the value of the
Prepetition Secured Parties' interest in the Debtor Prepetition Collateral from and after the
Petition Date  for any reason provided for under the Bankruptcy Code, including, without
limitation, from the use of any Debtor Cash Collateral, pursuant to the provision of this Final
Order, the use, sale, lease or other diminution in value of the Debtor Prepetition Collateral other

7

than Debtor Cash Collateral or the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Debtor Prepetition Collateral (including any Debtor Cash Collateral) in accordance with sections 361, 362 and 363 of the Bankruptcy Code. The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to (i) protect the Prepetition Secured Parties from the diminution of their respective interests in the value of the Debtor Prepetition Collateral and (ii) obtain the foregoing consents and agreements.

K.      The Debtors stipulate and the Court finds that, in permitting the Debtors to use any Debtor Cash Collateral or in taking any other actions permitted by this Final Order, none of the Prepetition Secured Parties shall (i) have liability to any third party or be deemed to be in control of the operation of any of the Debtors or be deemed to be acting as control persons or insiders with respect to the operation or management of any of the Debtors, or (ii) owe any fiduciary duty to any of the Debtors, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.

L.      Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to them with respect to (i) proceeds, product, offspring or profits with respect to any of the Prepetition Collateral, or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Debtor Prepetition Collateral in a manner consistent with this Final Order.

M.      Notice of a Final Hearing was provided by the Debtors, whether by fax, email, overnight courier or hand delivery, on December 14, 2017 to certain parties in interest,

8

01:22708218.2

including: (a) the U.S. Trustee; (b) the United States Securities and Exchange Commission; (c) the Office of the United States Attorney for the District of Delaware; (d) the Internal Revenue Service; (e) Davis Polk & Wardwell LLP, as co-counsel to the Debtors' prepetition agent; (f) Potter, Anderson & Corroon LLP, as Delaware co-counsel to the Debtors' prepetition agent; (g) Weil, Gotshal & Manges LLP, as counsel to HPS Investment Partners, LLC as the New RCF Commitment Party and (h) those creditors holding the twenty (20) largest unsecured claims against the Debtors' estates (on a consolidated basis).  Sufficient and adequate notice of a Final Hearing and the entry of this Final Order have been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and 9006, as required by sections 361 and 363 of the Bankruptcy Code. No other or further notice need be given for entry of this Final Order. No objections were filed with respect to entry of this Final Order as evidenced by the Certification of Counsel filed on January 3, 2019. The Court, in its discretion, determined that a Final Hearing was not necessary based on a lack of opposition from parties in interest.

N.     Based on the record before the Court, it appears (and the Debtors and the Prepetition Agent (on behalf of the Term Lenders) have stipulated) that the terms of this Final Order, including, without limitation, as to the Debtors' use of the Debtor Prepetition Collateral, including any Debtor Cash Collateral, and the provision of adequate protection therefor, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms of this Final Order were negotiated in good faith and at arm's length between the Debtors and the Prepetition Agent on behalf of the Term Lenders.

O.     The Court concludes that entry of this Final Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow the Debtors

01:22708218.2

to preserve and maintain the value of their assets and businesses and enhance the Debtors' prospects for a successful reorganization.

Based upon the foregoing findings, stipulations and conclusions, and upon the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ON A FINAL BASIS:**

1.      <u>Motion</u>.  The Motion is granted to the extent set forth herein. The Debtors shall not use any Debtor Cash Collateral except as expressly authorized and permitted herein or by subsequent order of the Court. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      <u>Use of Cash Collateral</u>.  Subject to the terms and conditions of this Final Order, including the Carve Out, the Debtors are hereby authorized to continue to use the Debtor Cash Collateral in accordance with, and the Debtors have agreed to comply with, the Budget (as defined below) during the period from the Petition Date through and including the Termination Date for (i) working capital, general corporate purposes, and administrative costs and expenses of the Debtors incurred in the Chapter 11 Cases, including first-day related relief subject to the terms hereof; (ii) adequate protection payments to the Prepetition Secured Parties, as provided herein; and (iii) funding of the Carve Out.

3.      <u>Budget; Use of Collateral Proceeds</u>.

(a)      The Debtors are authorized to continue to use Debtor Cash Collateral in accordance with, and the Debtors have agreed to comply with, the 13-week cash disbursements and receipts budget (which budget shall include a 13-week forecast of transaction costs and capital expenditures) attached as **Exhibit 1** to the Interim Order (together with any replacement budget(s) delivered and accepted by the Prepetition Agent in accordance with the Interim Order or this Final Order, the "<u>Budget</u>"); *provided* the Budget line item for cash disbursements shall not include any adequate protection payments contemplated hereunder.

01:22708218.2

(b)     The authorization granted herein is solely with respect to the use of Debtor Cash Collateral. This Final Order shall not be deemed to authorize payment of non-ordinary course budgeted expenses that otherwise require Court approval (e.g., professional fees of professionals employed under Section 327 of the Bankruptcy Code).

(c)     Unless otherwise agreed to in writing by the Prepetition Agent and the Required Consenting Lenders (as defined in the Restructuring Support Agreement), the Debtors shall maintain no accounts except those identified in the *Debtors' Omnibus Motion for Entry of an Order Authorizing (i) the Continuation of Cash Management System and Ordinary Course Business Arrangements with and through Their Non-Debtor Affiliates and (ii) Continuation of Their Non-Debtor Affiliate Arrangements for the Payment of Insurance Policies, Payment of Taxes and Related Arrangements* [Docket No. 5] (the "Omnibus Motion"). The Debtors will issue checks on their own accounts for the purpose of paying any Court-authorized prepetition obligations included in the Budget only if and when authorized by a further order of the Court, and only when due and otherwise properly payable and not otherwise addressed herein.

(d)     Neither the Prepetition Secured Parties' consent to the Budget nor anything else herein shall be deemed or construed as agreement by the Prepetition Secured Parties to be surcharged under section 506(c) or any other provision of the Bankruptcy Code or equitable doctrine.

(e)     The consent of the Prepetition Secured Parties to the Budget shall not be construed as consent to any use of Debtor Cash Collateral after the occurrence of a Termination Event, regardless of whether the aggregate funds shown in the Budget have been expended.

4.     Entitlement to Adequate Protection.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Debtor Prepetition Collateral, including any Debtor Cash Collateral, in an amount equal to the aggregate postpetition diminution in value of the applicable Prepetition Secured Party's interest in the Debtor Prepetition Collateral for any reason provided for in the Bankruptcy Code, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Debtor Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code from and after the Petition Date (such diminution in value, the "Adequate Protection Obligations").  For

01:22708218.2

the avoidance of doubt, this Final Order shall be deemed to be a request by the Prepetition Secured Parties pursuant to section 363(e) of the Bankruptcy Code.

    5.    Adequate Protection.

As adequate protection, the Prepetition Secured Parties are hereby granted the following claims, liens, rights, and benefits:

    (a)    Section 507(b) Claim.  The Adequate Protection Obligations shall constitute allowed joint and several superpriority administrative claims against the Debtors as provided in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising in the Chapter 11 Cases (subject and subordinate only to the Carve Out), including all claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings, including without limitation any chapter 7 proceeding, under the Bankruptcy Code (the "507(b) Claim"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors excluding the Carve Out Reserves (as defined below), but including, without limitation, the proceeds and property recovered in respect of any Avoidance Actions.

    (b)    Adequate Protection Liens.  Effective as of the Petition Date, solely to the extent of the Adequate Protection Obligations and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Agent of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the Prepetition Agent for the benefit of the Term Lenders (all property identified in clauses (i), (ii) and (iii) below being collectively referred to as the "Adequate Protection Collateral"), subject only to the Carve Out (all such liens and security interests, the "Adequate Protection Liens"):

    (i)    First Priority on Unencumbered Property.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority lien and/or replacement lien on, and security interest in, all of the Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Debtors' estates, and all products, proceeds, rents and profits thereof, whether existing on or as of the Petition Date or thereafter

01:22708218.2

acquired, that is not subject to (x) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property") other than (i) the Carve Out Reserves and (ii) the Avoidance Actions, but including any proceeds or property recovered in respect of any Avoidance Action;

(ii)     Liens Junior to Certain Existing Perfected Liens.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable junior priority replacement lien on, and security interest in, all of Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including without limitation, all prepetition and postpetition property of the Debtors' estates, and all products and proceeds thereof, whether existing on the Petition Date or thereafter acquired (other than the property described in clauses (i) or (iii) of this paragraph 5(b) of this Final Order), that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the prepetition security interests and liens in favor of the Prepetition Agent (the "Other Senior Liens");

(iii)    Liens Senior to Certain Existing Liens.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the Debtor Prepetition Collateral and all of the Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Debtors' estates, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided* that such liens and security interests shall not prime the Other Senior Liens;

(iv)    Status of the Adequate Protection Claims.  Subject to the Carve Out, the Adequate Protection Liens shall not be (i) subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) except as otherwise set forth in clauses (i), (ii) and (iii) of this paragraph 5(b) of this Final Order, subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise; *provided* that the

13

Debtors shall not create, incur or suffer to exist any postpetition liens or security interests other than: (i) those granted pursuant to this Final Order; (ii) carriers', mechanics', operators', repairmen's, warehousemen's, or other similar liens arising in the ordinary course of business; (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations and performance bonds; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Credit Documents.

(c)     For purposes hereof, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below) in an amount agreed upon with the United States Trustee or as ordered by the Court; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code ("Professional Persons") at any time on or before the first business day following delivery by the Prepetition Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,500,000 incurred after the first business day following delivery by the Prepetition Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, the term "Carve Out Trigger Notice" shall mean a written notice delivered by electronic mail by the Prepetition Agent to the Debtors, their counsel, and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of a Termination Event (as defined below), stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(d)     Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the Prepetition Agent to the Debtors (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims. On the Termination Declaration Date, the Debtors shall deposit and hold cash in an amount equal to the Post-Carve Out Trigger Notice Cap in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Notice Cap (the "Post-Carve Out Trigger Notice Reserve," and, together with the Pre-Carve Out Notice Reserve, the "Carve Out

Reserves") prior to any and all other claims, it being understood that the Prepetition Secured Parties shall have a lien and security interest in any residual amount in such segregated account. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (ii) through (iii) of the definition of Carve Out set forth above, but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay any remaining obligations set forth in clause (i) of the definition of Carve Out set forth above, and then to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above, and then, to the extent the Post-Carve Out Trigger Notice Reserve has been reduced to zero, to pay the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in any of the Credit Documents, the Interim Order or this Final Order, following delivery of a Carve Out Trigger Notice, none of the Prepetition Secured Parties shall, nor shall they direct any entity to, sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. Further, notwithstanding anything to the contrary in the Interim Order or this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Prepetition Indebtedness and shall not increase or reduce the Prepetition Indebtedness; (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out; and (iii) in no way shall the Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary contained in the Interim Order or this Final Order, or any prepetition secured debt, the Carve Out shall be senior to the Adequate Protection Obligations and any all other forms of adequate protection, liens, or claims securing the Prepetition Indebtedness.

(e)   Payment of Allowed Professional Fees Prior to the Termination Declaration Date. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(f)   Payment of Carve Out On or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding or payment of the Carve Out from cash on hand or other available cash shall not reduce the Prepetition Indebtedness secured by the Adequate Protection Collateral.

6.   Additional Adequate Protection. As additional adequate protection:

01:22708218.2

(a)    Fees and Expenses:  The Debtors are authorized to pay, in accordance with this paragraph 6(a) of this Final Order, all pre-and postpetition reasonable and documented fees and expenses, when due, of (A) the Prepetition Agent including the reasonable and documented fees and expenses of (1) Davis Polk and Wardwell LLP, as counsel to the Prepetition Agent, (2) Potter Anderson & Corroon LLP, as local counsel to the Prepetition Agent, and (3) FTI Consulting, Inc., as financial advisor to the Prepetition Agent, and (B) Weil, Gotshal & Manges LLP and Morris, Nichols, Arsht & Tunnell LLP, as counsel and local counsel to the New RCF Commitment Party, in each case incurred before, on or after the Petition Date.  Invoices documenting the fees, expenses and disbursements set forth in this paragraph 6(a) of this Final Order (the "Invoiced Fees") shall be submitted to the Debtors and U.S. Trustee (subject in all respects to applicable privilege or work product doctrines) without the necessity of filing formal fee applications, including such amounts arising before, on or after the Petition Date; *provided* that the Debtors and the U.S. Trustee may object to the reasonableness of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") within the seven (7) business day period after the receipt of the invoices by the Debtors and the U.S. Trustee (the "Invoiced Fees Notice Period") by filing with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Prepetition Agent and the New RCF Commitment Party of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.  Invoices for the Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on an other than an hourly basis) and a reasonable description of services provided and the expenses incurred by the applicable professional; *provided*, however, that any such invoice: (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail (provided, that such invoice shall contain (except for financial advisors compensated on an other than an hourly basis), at a minimum, summary data regarding hours worked by each timekeeper for the applicable professional). The Debtors shall pay (i) any Invoiced Fees that are not Disputed Invoiced Fees no later than three (3) business days after the end of the Invoiced Fees Notice Period and (ii) Disputed Invoiced Fees within five (5) business days after approval by the Court authorizing payment of any previously Disputed Invoiced Fees.

(b)    Other Covenants:  The Debtors shall comply with the Budget and maintain their cash management arrangements in a manner consistent with the final order granting the relief sought in the Omnibus Motion.  The Debtors shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of the Court to do any of the foregoing, without prior consultation with the Prepetition Agent, at least five (5) business days prior to the date on which the Debtors seek the authority of the Court for such use, sale or lease.  The Debtors shall comply with the covenants contained the Credit Documents, regarding the maintenance and insurance of the Prepetition Collateral and the Adequate Protection Collateral.

(c)    Reporting:  The Debtors shall comply with the reporting requirements set forth in the Credit Documents, all of which reports shall be provided to the Prepetition Agent.  In addition, the Debtors shall provide the following additional reporting to the counsel to the New RCF Commitment Party and the Prepetition Agent (for the benefit of the Term Lenders):

(i)     once every fourteen (14) calendar days, beginning on Friday, December 22, 2017 and every second Friday thereafter through the Effective Date, an updated rolling 13-week cash flow forecast of the Debtors and their subsidiaries substantially in the form of the Budget and otherwise in form and substance reasonable to the Required Consenting Lenders, which updated rolling 13-week cash flow forecast, after approval from the Required Consenting Lenders on notice to the Debtors, shall become the Budget until delivery and acceptance of the subsequent updated 13-week cash flow forecast; and

(ii)    the Debtors will provide, and/or make themselves available to representatives of the New RCF Commitment Party and the Prepetition Agent to discuss, qualitative explanations with respect to the foregoing.

(d)    In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Credit Documents, upon reasonable prior written notice, at reasonable times during normal business hours, and otherwise not to be unreasonably withheld, the Debtors shall permit representatives, advisors, agents, and employees of the New RCF Commitment Party and the Prepetition Agent (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, management, financial advisors and counsel.

(e)    Right to Seek Additional Adequate Protection. This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request additional forms of adequate protection in the event of a Termination Event.

7.    Termination. The Debtors' right to use the Debtor Cash Collateral pursuant to this Final Order shall terminate (the date of any such termination, the "Termination Date") without further notice or court proceeding five (5) business days (any such five-business-day period of time, the "Default Notice Period") following the delivery of a written notice (any such notice, a "Default Notice") by the Prepetition Agent to the Debtors, Simpson Thacher & Bartlett LLP, Young Conaway Stargatt & Taylor, LLP, and the U.S. Trustee of the occurrence of any of the events set forth below unless such occurrence is cured by the Debtors prior to the expiration of the Default Notice Period with respect to such clause or such occurrence is waived by the Prepetition Agent in its sole discretion, *provided* that, during the Default Notice Period, the

17

01:22708218.2

Debtors shall be entitled to continue to use the Debtor Cash Collateral in accordance with the terms of this Final Order (the events set forth in clauses (a) through (q) below are collectively referred to herein as the "Termination Events"):

(a)     Failure of the Debtors to make any payment under this Final Order to, or for the benefit of, any Prepetition Secured Party or the New RCF Commitment Party after such payment becomes due;

(b)     Termination of the Restructuring Support Agreement in accordance with its terms by the Consenting Lenders or the Debtors;

(c)     Failure of the Debtors to: (i) comply with any material provision of this Final Order; or (ii) comply with any other covenant or agreement specified in this Final Order (other than those described in clause (i) above);

(d)     The Debtors shall grant, create, incur or suffer to exist any postpetition liens or security interests other than: (i) those granted pursuant to the Interim Order or this Final Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Credit Documents;

(e)     An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Final Order without the written consent of the Prepetition Agent and the Required Consenting Lenders;

(f)     The Court shall terminate or shorten the period pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

(g)     The entry of an order in the Chapter 11 Cases charging any of the Prepetition Collateral or Adequate Protection Collateral under section 552(b) of the Bankruptcy Code or section 506(c) of the Bankruptcy Code against any of the Prepetition Secured Parties under which any person takes action against the Prepetition Collateral or Adequate Protection Collateral or that becomes a final non-appealable order;

(h)     The entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $1 million;

18

01:22708218.2

(i)    The entry of any postpetition judgment against any Debtor in excess of $1 million;

(j)    The Debtors and the non-Debtor affiliates, on a consolidated basis, shall fail to hold unrestricted cash or cash equivalents in an aggregate amount of not less than (i) $15,000,000 as of each Friday, commencing with Friday December 15, 2017 and ending on and including Friday February 2, 2018 and (y) $10,000,000 as of each Friday thereafter;

(k)    The payment of any prepetition claims against the Debtors that are junior in interest or right to the liens and mortgages on such collateral held by the Prepetition Agent on behalf of the Term Lenders, other than as permitted by an order entered in the Chapter 11 Cases;

(l)    The existence of any claims or charges, or the entry of any order of the Bankruptcy Court authorizing any claims or charges, other than as permitted under this Final Order, entitled to superpriority under section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the Prepetition Indebtedness, or there shall arise or be granted by the Bankruptcy Court (i) other than the Carve Out, any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503, including the 507(b) Claims, or (ii) subject to the Other Senior Liens, any lien on the Prepetition Collateral or Adequate Protection Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in the Credit Documents or in this Final Order;

(m)    The Court shall have entered an order dismissing any of the Chapter 11 Cases;

(n)    The Court shall have entered an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(o)    The Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in the Chapter 11 Cases, unless consented to in writing by the Prepetition Agent;

(p)    A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Indebtedness or asserting any other cause of action against and/or with respect to the Prepetition Indebtedness, the Prepetition Collateral, or the Prepetition Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party), other than any cause of action to enforce the terms of the Restructuring Support Agreement; and

(q)    The Debtors shall obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against any of the Prepetition Secured Parties relating to the Prepetition Indebtedness.

19

8.      <u>Remedies upon the Termination Date</u>.  Upon the occurrence of the Termination Date, and subject in all respects to the Debtors' reservation of rights included in paragraph 14 of this Final Order, (a) the Adequate Protection Obligations, if any, shall become due and payable, and (b) each Prepetition Secured Party may exercise the rights and remedies available under the Credit Documents, this Final Order or applicable law (subject only to the Carve Out), including without limitation, foreclosing upon and selling all or a portion of the Debtor Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations. The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to permit such actions, *provided* that during the Default Notice Period, unless the Court orders otherwise, the automatic stay under section 362 of the Bankruptcy Code (to the extent applicable) shall remain in effect. Any delay or failure of the Prepetition Secured Parties to exercise rights under the Credit Documents or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable document.  Without limiting the Debtors' rights under, and subject in all respects to, paragraph 14 of this Final Order, the Prepetition Agent shall be entitled to apply the payments or proceeds of the Debtor Prepetition Collateral and the Adequate Protection Collateral in accordance with the provisions of the Credit Documents, and in no event shall any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Debtor Prepetition Collateral, the Adequate Protection Collateral or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured

20

Parties and the New RCF Commitment Party under this Final Order shall survive the Termination Date.

9.  <u>Limitation on Charging Expenses Against Collateral</u>. Except to the extent of the Carve Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the Adequate Protection Collateral, or the Prepetition Secured Parties pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the affected party, and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties.  Neither the Prepetition Secured Parties' consent to the Budget nor anything else herein shall be deemed or construed as agreement by the Prepetition Secured Parties to be surcharged under section 506(c) or any other provision of the Bankruptcy Code or equitable doctrine.

10.  <u>Payments Free and Clear</u>.  Subject in all respects to the rights of third parties set forth in paragraph 18 of this Final Order, except to the extent of the Carve Out, any and all payments or proceeds remitted to the New RCF Commitment Party or the Prepetition Agent on behalf of the Prepetition Secured Parties pursuant to the provisions of this Final Order or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment, or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

11.  <u>Bankruptcy Code Section 552(b)</u>. Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the

01:22708218.2

"equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral.

12.    <u>All Parties' Reservation of Rights</u>.  All parties reserve their rights to argue that, to the extent that any cash payment of fees and expenses as adequate protection to the Prepetition Secured Parties or the New RCF Commitment Party is not allowed under section 506(b) of the Bankruptcy Code or on any other basis (including, without limitation, on account of the Debtors' use of Debtor Prepetition Collateral), such payments should be recharacterized and applied as payments of principal owed under the Credit Documents, or such other equitable treatment to protect the Debtors' estate in the event that recharacterization does not restore the effect of such payments; *provided* that the Prepetition Secured Parties and the New RCF Commitment Party reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

13.    <u>Reservation of Rights of the Prepetition Secured Parties</u>.  Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Agent and the other Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Agent and the other Prepetition Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition Secured Parties under the Credit Documents or under equity or law, and the Prepetition Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Credit Documents and/or equity or law in connection

22

01:22708218.2

with all Termination Events and Defaults and Events of Default (each as defined in the Credit Documents and whether arising prior to or after the Petition Date).

14.    Debtors' Reservation of Rights.  Notwithstanding anything to the contrary in this Final Order, following receipt of a Default Notice, and at any time before or after the occurrence of the Termination Date the Debtors may seek authority to use the Debtor Cash Collateral without the consent of the Prepetition Secured Parties, and the Prepetition Secured Parties reserve all rights to contest such relief.

15.    Modification of Automatic Stay.  The Debtors are authorized to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby and to deliver any notices of termination of the Restructuring Support Agreement.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors, each of the Prepetition Secured Parties and the New RCF Commitment Party to accomplish the transactions contemplated by this Final Order or to deliver a notice of termination of the Restructuring Support Agreement.

16.    Perfection of Adequate Protection Liens.

(a)    The Prepetition Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder, respectively. Whether or not the Prepetition Agent, in its sole discretion, chooses to file or record such financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute, recharacterization, impairment or subordination as of the date of entry of this Final Order. If the Prepetition Agent determines to file or execute any financing statements, agreements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such execution and/or filings as reasonably requested by the Prepetition Agent and the automatic stay shall be modified to allow such filings.

01:22708218.2

(b)    A certified copy of this Final Order may, in the discretion of the Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording; *provided* that, notwithstanding the date of any such filing, the date of such perfection shall be the date of entry of this Final Order.

(c)    Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the granting of Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the Credit Documents or this Final Order.

17.    Preservation of Rights Granted Under this Final Order.

(a)    Except as expressly provided in this Final Order, subject to the Carve Out, no claim or lien having a priority senior to or *pari passu* with those granted by this Final Order to the Prepetition Secured Parties shall be granted or allowed by the Debtors, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Notwithstanding any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the 507(b) Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such 507(b) Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)    The Prepetition Secured Parties and the New RCF Commitment Party shall be entitled to the protections afforded in section 363(m) of the Bankruptcy Code with respect to all uses of the Debtor Prepetition Collateral (including any Debtor Cash Collateral) and all Adequate Protection Obligations.

(d)    Subject to paragraphs 12 and 18 of this Final Order, the adequate protection payments made pursuant to this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the

01:22708218.2

Chapter 11 Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(e)     Except as expressly provided in this Final Order, the Adequate Protection Obligations, the 507(b) Claims and the Adequate Protection Liens and all other rights and remedies of the Prepetition Secured Parties and the New RCF Commitment Party granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Final Order shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the 507(b) Claims, the other administrative claims granted pursuant to this Final Order, and all other rights and remedies of the Prepetition Secured Parties and the New RCF Commitment Party granted by the provisions of this Final Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

18.     Effect of Stipulations.  As a result of the Debtors' review of the Credit Documents and the facts relating thereto, the Debtors have admitted, stipulated and agreed to the various stipulations, admissions and releases contained in this Final Order, including without limitation, the stipulations and admissions included in paragraphs D and E, which stipulations and admissions shall be binding upon the Debtors and any successors thereto in all circumstances. The stipulations, admissions and releases contained in this Final Order, including without limitation, in paragraphs D and E of this Final Order, shall also be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), for all purposes unless (a) such party (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so), in each case, with requisite standing granted by the Court, has properly filed an adversary proceeding or contested matter, as required under the Bankruptcy Rules (subject in either case to the limitations contained herein, including, without limitation, in paragraph 19 of Final Interim

25

Order) by no later than the date that is seventy-five (75) days from the date of entry of the Interim Order or the date on which a plan of reorganization or liquidation is confirmed, if earlier (the "Challenge Period") (x) challenging the amount, validity, enforceability, priority or extent of the Prepetition Indebtedness, or the liens on the Prepetition Collateral securing the Prepetition Indebtedness, or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Prepetition Secured Parties on behalf of the Debtors' estates (collectively, the "Claims and Defenses"), and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding; *provided* that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished effective as of the Petition Date.  If no adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, without further order of the Court: (w) the Debtors' stipulations, admissions, and releases contained this Final Order shall be binding on all parties in interest; (x) the Prepetition Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case; (y) the Prepetition Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (z) the Prepetition Indebtedness, the Prepetition Agent's liens on the Prepetition Collateral and the Prepetition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any

01:22708218.2

successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period); *provided* that (x) if the Chapter 11 Cases are converted to chapter 7 or a Trustee is appointed prior to the expiration of the Challenge Period, any such estate representative or Trustee shall receive the full benefit of any remaining Challenge Period (which Challenge Period shall be extended to provide a chapter 7 trustee appointed prior to the expiration of the Challenge Period no less than ten (10) days to assert any Claims and Defenses), subject to the limitations described herein and (y) if the Chapter 11 Cases are converted to chapter 7 after the expiration of the Challenge Period and, prior to such conversion, a statutory committee with requisite standing had timely filed an adversary proceeding or contested matter prior to the expiration of the Challenge Period, the chapter 7 trustee shall be deemed to be the successor to such adversary proceeding or contested matter.  If any such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, the stipulations, admissions and releases contained in this Final Order, including without limitation, in paragraphs D and E of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any person, including any Trustee, except as to any such findings and admissions that were expressly challenged in such adversary proceeding or contested matter. Nothing in this Final Order vests or confers on any person, standing or authority to pursue any cause of action belonging to the Debtors or their estates.  In the event that there is a timely successful challenge brought pursuant to this paragraph, the Court shall retain jurisdiction to fashion an appropriate remedy.

19.     <u>Limitation on Use of Collateral</u>.  The Debtors shall use the proceeds of the Debtor Prepetition Collateral solely as provided in this Final Order.  Notwithstanding anything herein or

27

01:22708218.2

in any other order of the Court to the contrary, and subject to the Carve Out, no Debtor Cash Collateral may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of the Prepetition Indebtedness, or the liens or claims granted under this Final Order or the Credit Documents; (b) assert any Claims and Defenses against any of the Prepetition Secured Parties or their respective agents, affiliates, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the Prepetition Secured Parties or the New RCF Commitment Party hereunder; or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of the Court.

20.    _Binding Effect; Successors and Assigns_.    The provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases and any successor chapter 11 case, including without limitation, the Prepetition Secured Parties and the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties, the New RCF Commitment Party and the Debtors and their respective successors and assigns, _provided_ that, except to the extent expressly set forth in this Final Order, the Prepetition Secured Parties or the New RCF Commitment Party shall have no obligation to permit the use of the Debtor Prepetition Collateral or extend any financing to any Trustee or similar responsible person appointed for the estate of any Debtor. For all adequate protection and stay relief purposes throughout the Debtors' Chapter 11 Cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate

28

protection as of the Petition Date. For the avoidance of doubt, such request will survive termination of this Final Order.

21.    <u>Limitation of Liability</u>.  In permitting the use of the Debtor Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors and shall not be  deemed to be acting as control persons or insiders with respect to the operation or management of any of the Debtors.  Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

22.    <u>Affirmation of Liens</u>.  Without prejudice to the rights of any other party (but subject to the limitations described herein in paragraphs 18 and 19 of this Final Order), (a) the Debtors are hereby authorized and deemed to ratify, reaffirm and adopt the Credit Documents, including the validity, extent, priority, perfection and enforceability of the liens, liabilities, and obligations to the Prepetition Agent incurred thereunder and the liens, security interests and mortgages granted to the Prepetition Agent thereunder and (b) the validity, extent, priority, perfection and enforceability of the Prepetition Secured Parties' prepetition claims, liens, mortgages and security interests in the Debtors' assets shall not be subject to invalidation, avoidance, subordination, or other challenge by the Debtors, and in furtherance thereof the Debtors hereby release, waive and affirmatively agree not to allege or otherwise pursue any or all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that they may have to contest (i) any Defaults or Events of Default (as such terms, or

01:22708218.2

similar terms are defined in the Credit Documents) that were or could have been declared by any of the Prepetition Secured Parties as of the Petition Date and (ii) the amount of the Debtors' indebtedness to the Prepetition Secured Parties as of the Petition Date.

23.     <u>Effectiveness</u>.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.  To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

24.     <u>Proofs of Claim</u>.  None of the Prepetition Secured Parties will be required to file proofs of claim in any of the Chapter 11 Cases or successor cases, and the Debtors' stipulations in paragraph D herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s).  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Chapter 11 Cases or successor cases shall not apply to any of the Prepetition Secured Parties with respect to the Prepetition Indebtedness.  Notwithstanding the foregoing, the Prepetition Agent (on behalf of the Term Lenders) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of claim for any claims of the Prepetition Secured Parties arising from the applicable Credit Documents; provided, that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

01:22708218.2

25.     Headings.  The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

26.     Jurisdiction.  The Court shall retain jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

27.     Controlling Effect of Final Order.  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion or the Interim Order, the provisions of this Final Order shall control to the extent of such conflict.

IT IS SO ORDERED.

Dated: _____, 2018
Wilmington, Delaware

_____
KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

01:22708218.2